```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION

Karen M. Thompson,              :

        Plaintiff,              :

    v.                          :       Case No.  2:14-cv-660

                                :       JUDGE PETER C. ECONOMUS
Commissioner of Social Security,        Magistrate Judge Kemp

        Defendant.              :
```

                    REPORT AND RECOMMENDATION

                         I.  Introduction

     Plaintiff, Karen M. Thompson, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on June 3, 2011, and alleged that Plaintiff became disabled on September 12, 2008.  That onset date was later amended to May 23, 2011.

     After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on February 14, 2013.  In a decision dated February 27, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on April 29, 2014, when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the administrative record on September 10, 2014.  Plaintiff filed her statement of specific errors on October 23, 2014, to which the Commissioner responded on January 31, 2015.  Plaintiff filed a reply brief on February 4, 2015, and the case is now ready to decide.

           II.  The Lay Testimony at the Administrative Hearing

     Plaintiff, who was 55 years old at the time of the

administrative hearing and who had completed three years of college, testified as follows.  Her testimony appears at pages 70-93 of the administrative record.

Plaintiff said that she last worked in May, 2011.  She was terminated due to an incident with a coworker.  She was working as a customer service representative.  That was a sedentary job which involved some typing.  She had prior jobs which were similar but in different industries.  She had also worked in the fine jewelry department at Macy's, as a technical customer service representative at Kinko's, and in retail sales at Marshall Field and Company.

According to Plaintiff, she could no longer work due to diabetes, medications, and pain.  Prolonged standing and sitting were both painful.  Her diabetes had never been controlled and her blood sugar was constantly over 300.  She had pain in her left hip, her back, and in her legs due to diabetic neuropathy.  Her hands were in pain as well.  Often, she took enough medication to put her to sleep, and she slept 18 to 20 hours per day.

Plaintiff testified that her hand pain made it difficult for her to fill out forms.  Her pain also interfered with her ability to care for herself.  She also had been experiencing depression since her brother died in 2012, and she tended to avoid being around people.  She could walk for only a few minutes due to pain and confusion.  She could not lift more than ten pounds.  Plaintiff attributed stiffness and soreness in her shoulders, back, and thighs to fibromyalgia.

### III.  The Medical Records

The medical records in this case are found beginning on page 341 of the administrative record.  The pertinent records - those relating to Plaintiff's two statements of error - can be summarized as follows.  Because those statements of error deal

only with Plaintiff's alleged psychological limitations, the Court will not summarize the evidence concerning physical impairment.

First, there are a large number of office notes from Plaintiff's general physician. At least through April, 2010, Plaintiff's mental status is described as normal with no depression, anxiety, or agitation, and Plaintiff was not being treated for any psychological impairment. Later notes from 2011 are similar.

Next, there is a report from Dr. Dubey, a psychologist, who performed a consultative evaluation on July 14, 2011. Plaintiff's presenting problems were high blood pressure and diabetes. She denied any difficulty concentrating and her cognitive functioning appeared to be in the average range. Her mood was appropriate, but she said that she felt "weary" most of the time and that she occasionally had crying spells. She was able to care for her personal needs. Dr. Dubey diagnosed a dysthymic disorder and rated Plaintiff's GAF at 65. He thought she could remember and carry out instructions in a work setting, could maintain concentration, persistence, and pace to perform both simple and multi-step tasks, could interact satisfactorily with others, and had no problems dealing with work stress. (Tr. 502-508).

Plaintiff's mental status was mentioned briefly in an examination report from Dr. Ayest-Offei dated July 14, 2011 (Tr. 513-16). At that point, she was taking a generic equivalent of Prozac. She said that she was not feeling depressed, was able to be around people, and could maintain personal relationships. She seemed unpleasant or irritable, however.

On August 10, 2012, Dr. Lee wrote a short note indicating that Plaintiff was being treated at the Grant Outpatient clinic for depression. At that time, a new medication was prescribed.

Her depression was described as "uncontrolled" and had gotten worse since the death of her brother.  Dr. Lee said that Plaintiff was "isolating herself from her family and friends. She has decreased energy and concentration."  (Tr. 604). Subsequent treatment notes list, among Plaintiff's multiple medical conditions, "depression, situational, acute."  (E.g. Tr. 667).  However, her mood and affect were described as appropriate.

Some state agency reviews were done as well.  Plaintiff's affective disorder was deemed not to be severe, presenting only mild difficulties in maintaining social functioning.  (Tr. 123-24).  Dr. Haskins made this note on August 10, 2011:

> No evidence of treatment for depression through PCP. In phone call alleged some possible anxiety issues and memory problems.  Only once mentioned an event of forgetfulness to PCP, seen every month and psychological difficulties are otherwise denied. Reported at CE that primary problem was physical.  Has no history of psychiatric treatment.  Presented w/o significant symptoms, was able to appropriately interact, complete tasks.  Is independent in ADL's.  No indication of a severe psych impairment.

(Tr. 124).  Dr. Lewin affirmed those findings on February 15, 2012.  (Tr. 162).

## IV.   The Vocational Testimony

Dr. Jerry Olsheski was the vocational expert in this case. His testimony begins at page 93 of the administrative record.

Dr. Olsheski was asked to categorize Plaintiff's past work. He identified her jobs as customer service representative, which was sedentary and skilled; as jewelry salesperson, which was light and skilled; as copy assistant, which was light and semi-skilled; as sales clerk, which was light and semi-skilled; and as graphic designer, which was sedentary and skilled.

-4-

Dr. Olsheski was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level but who could handle and manipulate only frequently, who could occasionally climb ramps and stairs but never ropes, ladders, or scaffolds, and who could occasionally stoop, crouch, and crawl but never be exposed to moving machinery or unprotected heights. Dr. Olsheski said that such a person could do all of Plaintiff's past jobs.

Dr. Olsheski was next asked about someone who had the same limitations as described in the first hypothetical, but who had to take unscheduled breaks throughout the work day. Such a person could not, he said, do any work at all. He also said that someone limited to unskilled work could not do Plaintiff's past work, nor could someone having the limitations described by Dr. Torello.

### V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 15-24 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014. Next, he found that Plaintiff had not engaged in substantial gainful activity since her amended onset date of May 23, 2011. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including diabetes, diabetic neuropathy, carpal tunnel syndrome, and degenerative disc disease of the lumbar spine. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level except that she could not handle or manipulate objects more than frequently, could not climb ladders, ropes, or scaffolds, could occasionally climb stairs and ramps, could occasionally stoop, crouch, and crawl, and could not be exposed to unprotected heights or moving machinery.  The ALJ next concluded that, given this residual functional capacity, Plaintiff could perform all of her past relevant work.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred by finding that Plaintiff's depression was not a severe impairment; and (2) the ALJ's residual functional capacity finding is not supported by substantial evidence.  These issues are evaluated under the following legal standard, and will be discussed together.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

    Plaintiff argues that she suffers from a severe psychological impairment, namely depression.  She notes that there is not a great deal of evidence that it affected her significantly before her brother died in February, 2012 (although she does not concede that, even in that time frame, it was not a severe impairment), but she contends that the ALJ clearly erred by not considering it severe after her brother's death because both Dr. Dubey's evaluation and the state agency reviews, upon which the ALJ relied, occurred prior to that date, and because there is evidence - mostly in the form of Dr. Lee's letter - that her depression worsened in 2012.  She also points to a handful of comments and testimony confirming that, and claims that the ALJ did not have a substantial basis for not crediting this evidence. In response, the Commissioner asserts that the ALJ properly determined both that Plaintiff's depression was not severe, making appropriate findings with respect to the paragraph "B" criteria, and that it did not impose any functional limitations. In her reply, Plaintiff contends that the ALJ did not actually consider any of the evidence about the worsening of her depression after February, 2012, and also failed to take into account limitations on her ability to socialize, which, she says, are fully supported by the record and therefore had to be

included in the residual functional capacity assessment even if her depression was not severe.

The ALJ acknowledged Plaintiff's testimony that her depression worsened after her brother passed away (Tr. 20). He then reviewed the evidence concerning her physical impairments (Tr. 20-21). Next, he evaluated her credibility, finding that inconsistencies between her statements and the objective records, as well as her description of her daily activities, indicated that she was not fully credible. He then discussed the opinion evidence, giving great weight to the opinions of the state agency consultants and some weight to the opinion of Dr. Dubey as being generally consistent with the record. He did not mention the letter written by Dr. Lee, nor did he make any express evaluation of the issue of whether her psychological condition did, as she testified, become more severe after the death of her brother. And it is correct, as Plaintiff points out, that all of the psychological evidence discussed by the ALJ predates that event.

The Court finds some merit in both prongs of Plaintiff's argument, although her contention that the ALJ seems to have disregarded even a modest amount of evidence that her impairment, even if not severe, imposed some functional limitations which had to be accounted for, is not her stronger claim. What is apparent, however, is that a reasonable person would have concluded from this record that the alleged changes in Plaintiff's psychological condition from February, 2012 forward needed to be evaluated in more depth. While it is certainly true that the ALJ need not cite to every piece of evidence in his decision, the failure to acknowledge critical evidence in any fashion, coupled with the fact that the opinion evidence on the issue of psychological limitations all predated a significant event in Plaintiff's life, requires the case to be remanded for further proceedings. As the Court of Appeals pointed out in

Karger v. Comm'r of Social Security, 414 Fed.Appx. 739, 753 (6th Cir. Feb. 10, 2011), the ALJ must "discuss enough [] evidence to enable [a reviewing court] to determine whether substantial evidence supports the [ALJ's] determination...."  Further, "'[a]n ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required.'" Williamson v. Comm'r of Social Security, 2013 WL 394572, *3 (S.D. Ohio Jan. 31, 2013), quoting Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995); see also Weaver v. Comm'r of Social Security, 2015 WL 64873, *8 (E.D. Tenn. Jan. 5, 2015)("In order to determine whether the ALJ's RFC assessment was supported by substantial evidence, the Court looks at whether the ALJ met his investigatory duties. ... [An ALJ] ... must investigate and consider the evidence in its entirety, especially critical pieces of evidence").  For these reasons, the case should be remanded to the Commissioner for further proceedings.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein,

may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

>/s/ Terence P. Kemp
> United States Magistrate Judge